# REDLINE COMPARISON

**Operative Amended Complaint (ECF No. 9) vs. Proposed Second Amended Complaint**

~~Deletions: red strikethrough —~~ Additions: blue underline

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK ~~-------------------------------------------------------------x MICHAEL MATLOCK, PLAINTIFF, Case No. 1:25-cv-10081-AS~~
~~v.~~
~~THE CITY OF NEW YORK, POLICE OFFICER BRENDEN ROGERS, SHIELD NO. 2146, SERGEANT ANDRE MICHEL, SHIELD NO. 2637,~~
~~DEFENDANTS. -------------------------------------------------------------x~~
~~AMENDED COMPLAINT AND JURY DEMAND~~

Plaintiff ~~MICHAEL MATLOCK,~~ Michael A. Matlock, by his attorney, alleges as follows:

**PRELIMINARY STATEMENT**

1. This ~~is a civil rights~~ action ~~brought pursuant to~~ under 42 U.S.C. § 1983 and New York law ~~to redress the unlawful arrest, malicious prosecution, and abuse of process committed against Plaintiff Michael Matlock by officers of~~ arises from Plaintiff's warrantless arrest at the New York City Police ~~Department ("NYPD").~~ ~~Plaintiff further seeks to hold~~ Department's 9th Precinct on April 15, 2025, at approximately 1:41 p.m., and the ~~City of New York liable under Monell for policies, customs, and practices~~ criminal prosecution that ~~caused and ratified these constitutional violations.~~ ~~This action arises from Plaintiff's~~ followed. The arrest and prosecution ~~based~~ concerned an accusation that Plaintiff had taken mail allegedly containing a Social Security card and employment-authorization card belonging to Christine Roudier.

2. The accusation rested principally on Roudier's assertion that she recognized Plaintiff's signature on a one-page United States Postal Service image. The records now disclosed contain materially different accounts of whether the mailing was delivered to a Broadway address or instead retrieved from a postal facility; identify different apartment numbers; reflect different relevant dates; and identify no postal witness, recovery of the cards, authenticated proof of the package contents, comparison of signatures, demand for return, refusal to return, admission, or eyewitness to Plaintiff's possession of the items.

3. Although Plaintiff voluntarily surrendered after an ~~uncorroborated accusation, despite readily available exculpatory information,~~ express pre-surrender agreement that he would be processed and ~~in direct contravention of written New York City Police Department ("NYPD") rules, policies, and training materials set forth in the NYPD Patrol Guide and Administrative Guide. Defendants' conduct departed from mandatory investigative duties, discretionary arrest standards, property-handling procedures, and supervisory obligations, rendering the~~ promptly released on a desk appearance ticket, Defendants placed him under custodial arrest and ~~prosecution objectively unreasonable~~ confined and ~~unconstitutional.~~ ~~Plaintiff pleads that Defendants violated~~ processed him for several hours. Defendant Rogers later signed and swore to the ~~NYPD Patrol Guide as evidence of~~ criminal complaint. The charges were dismissed on September 8, 2025, and the ~~objective unreasonableness of Defendants' conduct, the existence of supervisory ratification, and the City's deliberate indifference under Monell. Such internal policies are probative of what reasonable officers and supervisors are trained and expected to do under the circumstances. We do not plead such violations as creating independent causes of action.~~ record was sealed.

**JURISDICTION AND VENUE**

~~1.~~ 4. This Court has subject-matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and ~~1343.~~ 1343(a)(3)-(4).

~~2.~~ 5. This Court has supplemental jurisdiction over ~~state-law claims~~ the related New York-law claim under 28 U.S.C. § ~~1367.~~ 1367(a).

~~3.~~ 6. Venue is proper in this District under 28 U.S.C. § ~~1391~~ 1391(b)(2) because the events and omissions giving rise to ~~these~~ the claims occurred in New York County, within this District.

**PARTIES**

~~4.~~ 7. Plaintiff Michael A. Matlock is ~~an individual residing outside~~ a United States citizen and has resided in Key West, Florida since approximately 2016. At the ~~State~~ time of ~~New York.~~ the arrest, he was approximately 78 years old.

~~5.~~ 8. Defendant City of New York is a municipal ~~entity responsible for the policies, practices, and customs of~~ corporation that maintains the NYPD. It is sued on the New York-law malicious-prosecution claim under respondeat superior for torts committed by its employees within the scope of their employment.

~~6.~~ 9. Defendant Police Officer Brenden Rogers, Shield No. 2146, was at all relevant times an NYPD employee acting under color of state law. The disclosed records identify him as a reviewing supervisor in the December 2024 reporting chain, the arresting officer on April 15, 2025, and the officer who signed and swore to the criminal complaint on April 21, 2025.

10. Defendant Sergeant Andre ~~Michel was,~~ Michel, Shield No. 2637, was at all relevant ~~times,~~ times an NYPD supervisor acting under color of state law. The disclosed records identify him as a supervisor in the December 2024 reporting chain and as the desk or supervising officer who participated in and approved the April 15, 2025 arrest and desk-appearance-ticket process.

~~7.~~ 11. Defendant Police Officer ~~Brenden Rogers was,~~ Jamilette Holligan, shield number presently unknown, was at all relevant ~~times,~~ times an NYPD ~~officer~~ employee acting under color of state law. The NYPD arrest report identifies her as an assisting officer in Plaintiff's arrest. Upon information and belief, she participated directly in taking Plaintiff into custody or maintaining that custody. The precise scope of her conduct is particularly within Defendants' possession and will be clarified in discovery.

12. Defendant Police Officer Robby Valdez, shield number 21848, was at all relevant times an NYPD employee acting under color of state law. The disclosed domestic-incident report identifies him as the reporting officer who received and recorded Roudier's accusation on December 5-6, 2024. Upon information and belief, he participated in creating or forwarding the factual record that led to the I-Card and prosecution. The precise scope of his conduct and knowledge is particularly within Defendants' possession and will be clarified in discovery.

13. John/Jane Doe NYPD Members 1-5 are the presently unidentified officers or supervisors who created or approved the I-Card, approved or effectuated the arrest, maintained Plaintiff's confinement, or transmitted materially false or incomplete information for prosecution. They acted under color of state law. Plaintiff will substitute their names when learned.

**FACTUAL ALLEGATIONS**

~~8. Complainant Christine Roudier claimed that she believed~~ 14. Plaintiff formerly lived at 832 Broadway in Manhattan but had ~~received and stolen~~ resided in Florida continuously since approximately 2016. The Broadway location continued to be associated with Plaintiff as a ~~letter and work permit she had sent~~ business or mailing address; use of an address did not establish Plaintiff's domicile or any intent to ~~his NYC business address.~~

~~9. She based her theft allegation primarily upon her alleged ability to identify his signature made on a United States Postal Certificate and his failure to turn over such received mail to her.~~

~~10. Complainant failed to claim that she had contacted him about such mail or that he had ever made incriminating statements concerning such~~ steal mail.

~~11. The Defendants failed~~ 15. On December 5, 2024, Roudier complained to ~~disclose to Plaintiff any copy of this USPS document~~ NYPD that ~~she~~ mail intended for her, allegedly containing a Social Security card and employment-authorization card, had been taken or received through an address associated with Plaintiff. ~~alleged to prove her theft claim.~~

~~12. NYPD also failed to explain how Ms. Roudier was able or would be able to even obtain such USPS personal documents with Plaintiff's alleged signature.~~

~~13. Ms.~~ 16. Roudier had ~~no lawful right to use Plaintiff's~~ used an address ~~to receive her~~ associated with Plaintiff for personal mail.

~~14. Nor did complainant have~~ This history supplied a noncriminal explanation for any ~~lawful right to obtain his documents from the United States Post Office.~~

~~15. Defendants failed to produce any evidence~~ mailing arriving at that ~~Plaintiff had given her consent to send her mail to his office address.~~

~~16. Defendants failed~~ address and a reason to investigate ~~readily available information showing that Ms. Roudier had repeatedly and improperly used Plaintiff's office address to receive personal mail.~~ the accusation carefully.

17. ~~At no time did Plaintiff steal Ms. Roudier's mail.~~ The disclosed USPS image appears to reflect a November 16, 2024 event and an address of 832 Broadway, Apartment 1, while other police records identify Apartment 5. Other records state that Roudier went to retrieve mail on or about November 25, 2024 and was told it had already been picked up. Still other records describe delivery to an address rather than pickup at a postal facility.

18. ~~Nor does~~ The police records do not identify the postal employee who allegedly supplied information to Roudier; do not contain a complete USPS event history, GPS or delivery-device data, or authenticated signature record; and do not identify an eyewitness who saw Plaintiff ~~have any motive~~ receive, retrieve, possess, conceal, or ~~reason to want to steal her Social Security mail.~~ dispose of the items.

19. ~~Defendants failed~~ No allegedly stolen card was recovered from Plaintiff. No disclosed report records a demand by Roudier for return of the cards, a refusal by Plaintiff, an admission by Plaintiff, or ~~refused~~ any statement showing an intent permanently to ~~produce any USPS delivery confirmation to support complainant's story.~~ deprive Roudier of property.

20. ~~Neither Plaintiff nor his office has ever received any such Social Security mail at his NYC address~~ The available records do not establish that the tracked item actually contained the two cards. They repeat Roudier's description but do not identify the sender, packaging record, or ~~anywhere else.~~ other independent proof of contents.

21. ~~No evidence existed~~ The disclosed police forms nevertheless classified the matter as completed petit larceny and generated an I-Card that designated Plaintiff ~~ever signed~~ as a person for ~~his own mail, which contained any such mail of complainant.~~ whom probable cause to arrest supposedly existed. The I-Card was not a judicial warrant.

22. ~~Despite these~~ Valdez prepared the initial domestic-incident report. Michel signed or approved that report as supervisor, and ~~many other unexplained~~ Rogers was identified as a reviewing supervisor. Thus, Michel and Rogers participated in reviewing the accusation months before the arrest and had an opportunity to recognize and investigate the missing proof and inconsistent ~~facts with Ms. Roudier's uncorroborated allegation, Defendants accepted such allegations without corroboration.~~ accounts.

23. ~~Defendants failed to verify delivery records, address information,~~ On or ~~other readily available exculpatory evidence.~~

~~24. When Defendant~~ about February 26, 2025, while Plaintiff was in Ottawa, Canada, Rogers telephoned Plaintiff concerning the accusation and claimed that ~~he resided~~ Plaintiff lived in ~~NYC,~~ New York City or that a warrant was being issued. Plaintiff promptly ~~correctly explained~~ told Rogers that he lived in Florida ~~— not~~ and had done so for years.

24. Rogers referred to one or more unidentified neighbors who supposedly said Plaintiff lived in New York City. No neighbor statement or identity appears in the disclosed production. In any event, residence at or association with an address would not establish that Plaintiff knowingly possessed Roudier's cards or intended to steal them.

25. Plaintiff denied stealing or possessing Roudier's cards. Defendants ~~claimed~~ did not confront him with authenticated postal records, interview an identified postal witness in his presence, recover property, or identify evidence establishing the item's contents or criminal intent.

26. Plaintiff, through counsel, arranged to surrender at the 9th Precinct and expected to be processed for and promptly released on a desk appearance ticket. His voluntary surrender, known identity, age, nonviolent alleged

offense, and long-standing out-of-state residence showed that he posed no danger and was not attempting to evade the police.

27. On April 15, 2025, Plaintiff appeared voluntarily at the NYPD 9th Precinct, located at 321 East 5th Street, New York, New York 10003.

28. At approximately 1:41 p.m. that day, Rogers, with the participation or approval of Michel, Holligan, and one or more ~~unnamed neighbors~~ Doe officers, placed Plaintiff under custodial arrest for an alleged past petit larceny. No arrest warrant had ~~claimed~~ been issued.

29. The arrest report identifies Rogers as the arresting officer, Michel as a supervising or desk officer, and Holligan as an assisting officer. The desk appearance ticket likewise identifies Rogers and Michel in the arrest and desk-officer roles.

30. Defendants confined Plaintiff in the precinct holding area and subjected him to prisoner processing. A prisoner movement slip was printed at approximately 4:13 p.m.; Rogers body-camera files bear times of approximately 4:03 p.m. and 4:19 p.m.; and Plaintiff was thereafter released with a desk appearance ticket. Plaintiff alleges that ~~Plaintiff resided~~ the entire custodial process lasted several hours; the exact release and holding-cell times are recorded in Defendants' systems and presently unavailable to him.

~~New York City; however, such hearsay statements, even if made, were irrelevant to whether~~

~~Plaintiff stole mail, did not establish criminal intent,~~ 31. Before and ~~did not excuse Defendants' failure to~~

~~verify readily available postal records or other objective evidence relevant to~~ during the ~~alleged offense.~~

~~26. Defendants possessed no facts that could reasonably support Ms. Roudier's claim that~~

~~Plaintiff~~ arrest, Rogers and Michel had ~~acted,~~ reviewed or had access to records reflecting Roudier's prior use of an address associated with Plaintiff for personal mail, conflicting accounts of delivery versus pickup, inconsistent address information, absence of recovered property, absence of a postal eyewitness, and absence of any ~~intent~~ admission or refusal to ~~act, to steal her Social Security mail or to permanently~~

~~and unlawfully deprive her of such mail.~~

~~27. The undisputed facts known to Defendants affirmatively negated criminal intent.~~

~~28. At no time did Defendants possess any information corroborating the complainant's~~

~~accusation.~~

~~29. NYPD Patrol Guide § 202-01 requires officers to investigate suspicious circumstances~~

~~encountered during police activity.~~

~~30. Contrary to Patrol Guide § 202-01, Defendant Rogers failed to conduct any meaningful~~

~~investigation, including failing to verify readily available delivery or address records.~~

~~31. NYPD Patrol Guide property-handling procedures require non-arrest processing for~~

~~misdelivered or disputed~~ return property.

32. ~~Plaintiff's circumstances fell squarely within those categories, yet Defendants effectuated a~~

~~custodial arrest.~~ Those were not merely investigative avenues left unexplored. The facts already known to Rogers and Michel materially undermined the reliability and sufficiency of the accusation, including conflicting accounts of delivery versus pickup, inconsistent address information, the absence of recovered property or an identified postal witness, and the absence of any admission or refusal to return property. Nevertheless, before arresting Plaintiff, Rogers and Michel did not resolve readily verifiable postal, signature, address, contents, or witness information bearing directly on whether Plaintiff ever knowingly possessed Roudier's property or acted with larcenous intent.

33. ~~Despite~~ Holligan and the ~~lack~~ Doe arresting or assisting officers participated in the arrest or continued confinement despite circumstances demonstrating the absence of adequate probable ~~cause, Defendants arrested Plaintiff, subjecting him to custodial~~

~~detention in a holding cell with other arrestees for more than three hours.~~

~~34. Defendants arrested Plaintiff regarding a non-violent offense,~~ cause. To the extent any such defendant did not directly effectuate the arrest or confinement, that defendant knew ~~his identity, and~~

~~possessed no information indicating that he presented a flight risk or danger to the community.~~

~~35. Plaintiff satisfied all objective DAT criteria, including the non-violent nature~~ of the ~~charges,~~

~~confirmed identity, lack of flight risk,~~ circumstances, had a realistic opportunity to prevent or terminate the unlawful seizure, and ~~availability for court appearances.~~

~~36. Accordingly, Plaintiff was presumptively eligible for a Desk Appearance Ticket under~~

~~NYPD policy as Plaintiff's attorney discussed~~ failed to intervene. These allegations are made on information and ~~agreed to with Defendant Michel.~~

~~37. Defendant Sergeant Michel approved the arrest without requiring corroboration or~~

~~reassessment of probable cause.~~

~~38. Defendants initiated a criminal prosecution~~ belief based on the ~~same deficient~~ arrest report and ~~uncorroborated~~ records identifying their roles; the body-camera recordings and native audit records will supply further detail.

34. On April 21, 2025, Rogers signed and swore to a criminal complaint charging Plaintiff under New York Penal Law §§ 155.25 and 165.40. The complaint relied on Roudier's account, a purported ~~evidence~~ USPS pickup or delivery receipt, and her claimed recognition of ~~probable cause.~~ Plaintiff's signature.

~~39. Even after Plaintiff was released, he continued to be seized for purposes of~~ 35. In initiating the ~~Fourth Amendment based upon his mandatory court appearances, travel restrictions, bail conditions,~~ prosecution, Rogers presented the accusation without disclosing the material weaknesses and

~~ongoing obligation to defend against charges.~~

~~40. Exculpatory information became available to Defendants during the pendency of the case.~~

~~41. Defendants failed to reassess probable cause and continued the prosecution.~~

~~42. At no time did Defendants disclose or correct the absence of probable cause to the~~

~~prosecuting authority, despite their continuing obligation to do so once exculpatory facts became~~

~~known.~~

~~43. Defendants' failure to correct or disclose the absence of probable cause foreseeably caused~~

~~the continued prosecution.~~

~~44. The criminal proceeding ultimately terminated in Plaintiff's favor.~~

~~COMPARISON TO GOVERNING NYPD RULES~~

~~45. Defendants' conduct departed from NYPD rules as follows:~~

~~(a) Failure to investigate contrary to Patrol Guide § 202-01;~~

~~(b) Arrest despite property-handling rules favoring non-custodial resolution;~~

~~(c) Failure to utilize DAT discretion;~~

~~(d) Supervisory ratification contrary to Administrative Guide obligations.~~

~~46. The foregoing and subsequent factual allegations plausibly plead each element of false arrest,~~

~~malicious prosecution, supervisory liability, and municipal liability,~~ contradictions described above, including the absence of a postal witness, recovery of the allegedly stolen cards, authenticated signature comparison, independent proof of contents, demand and refusal, admission, or other evidence of knowing possession or intent to deprive.

~~probable cause, existence of malice,~~ 36. Upon information and belief, Michel, Valdez, and one or more Doe defendants caused or contributed to the initiation or continuation of ~~prosecution,~~ the prosecution by creating, approving, forwarding, or causing prosecutors to receive materially incomplete or misleading police records concerning the accusation, despite knowing or recklessly disregarding the material gaps or contradictions. The native report histories, communications, and records identifying who transmitted particular information are exclusively within Defendants' possession.

37. As required by the desk appearance ticket, Plaintiff appeared in Manhattan Criminal Court with counsel on May 5, 2025. The prosecution remained pending thereafter until September 8, 2025. No further personal ~~involvement, policy~~ court appearance by Plaintiff was required before dismissal.

~~deviation,~~ 38. The criminal proceeding was dismissed on September 8, 2025. The disclosed court action sheet appears to reflect dismissal pursuant to CPL § 30.30, and ~~causation.~~ the record was sealed pursuant to CPL § 160.50. The proceeding terminated without a conviction.

~~**MUNICIPAL LIABILITY (MONELL)**~~

~~47. The City~~ 39. On or about October 15, 2025, Plaintiff served a Notice of Claim arising from the arrest and prosecution; the New York ~~maintained written policies governing investigation, discretion,~~ City Comptroller

received it on October 30, 2025 and assigned Claim No. 2025P1035318. More than thirty days elapsed before suit, and the City did not adjust or pay the claim.

~~supervision.~~

~~48. Defendants acted contrary to those policies,~~ 40. As a direct and ~~supervisors approved or tolerated such conduct.~~

~~49.~~ proximate result of Defendants' ~~superficial steps~~ conduct, Plaintiff suffered loss of ~~investigation~~ liberty, humiliation, emotional distress, reputational injury, legal expense, and other compensable damages. In connection with the criminal matter, Plaintiff's NEXUS trusted-traveler privileges were ~~treated as sufficient within the NYPD,~~

~~reflecting a custom of tolerating arrests unsupported by legally adequate probable cause.~~

~~50. The City's failure to discipline or correct such conduct constitutes deliberate indifference to~~

~~the rights of persons such as Plaintiff.~~

~~51. The constitutional violations alleged were a predictable consequence~~ withdrawn and have not been restored despite dismissal of the ~~City's tolerance~~

charges. Plaintiff regularly travels between the United States and Canada because he owns a residence and conducts business in Ottawa. The loss of ~~arrests made without required investigation or corroboration.~~ NEXUS privileges has subjected him to substantially increased border-processing delays, including secondary inspection and multi-hour delays, and has disrupted his personal and business travel.

**FIRST CAUSE OF ACTION** ~~**(False**~~

False Arrest ~~—~~ - 42 U.S.C. § ~~1983)~~ 1983

41. Plaintiff repeats and realleges paragraphs 1 through 40.

42. Rogers, Michel, Holligan, and the responsible Doe defendants intentionally confined Plaintiff under color of state law. Plaintiff was conscious of and did not consent to that confinement.

43. The confinement was not privileged because the individual defendants lacked probable cause to believe Plaintiff had committed petit larceny or criminal possession of stolen property and because no reasonable officer could disregard the material contradictions and readily verifiable gaps known before the warrantless arrest.

44. The conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and caused damages.

**SECOND CAUSE OF ACTION**

Malicious Prosecution - 42 U.S.C. § 1983

45. Plaintiff repeats and realleges paragraphs 1 through 40.

46. Rogers initiated the prosecution by signing and swearing to the criminal complaint. Upon information and belief, Michel, Valdez, and the responsible Doe defendants caused or contributed to the initiation or continuation of the prosecution by creating, approving, forwarding, or causing prosecutors to receive materially incomplete or misleading information on which the prosecution relied.

47. The prosecution lacked probable cause. Defendants acted with actual malice or reckless disregard for Plaintiff's rights, as shown by their initiation or continuation of charges despite the material contradictions, missing proof, and noncriminal explanations known to them.

48. The prosecution terminated in Plaintiff's favor on September 8, 2025 without a conviction.

49. The prosecution compelled Plaintiff to appear in Manhattan Criminal Court on May 5, 2025, and thereafter remain subject to the pending criminal proceeding and the authority of the Criminal Court until dismissal. Plaintiff alleges that the resulting restraint on his liberty was consistent with a Fourth Amendment seizure and caused compensable damages. No further personal court appearance was required before dismissal.

**THIRD CAUSE OF ACTION**

Failure to Intervene - 42 U.S.C. § 1983

50. Plaintiff repeats and realleges paragraphs 1 through 40.

51. To the extent Holligan or a responsible Doe defendant did not directly commit the false arrest or unlawful confinement, that defendant observed or knew of the violation, had a realistic opportunity to prevent or terminate it, and deliberately failed to intervene.

52. ~~Defendants arrested Plaintiff without a warrant~~ That failure caused or prolonged Plaintiff's unlawful seizure and ~~without probable cause and in violation of New York statutes.~~

~~53. Defendants' violations of the NYPD Patrol Guide are probative of the objective unreasonableness of their conduct under the Fourth Amendment.~~

~~54. The arrest constituted an unreasonable seizure~~ prosecution in violation of the Fourth Amendment.

~~55. No reasonable officer could have concluded probable cause existed under these circumstances.~~

**~~SECOND~~ FOURTH CAUSE OF ACTION ~~(Malicious~~**

Malicious Prosecution ~~– 42 U.S.C. § 1983)~~ - New York Law

~~56. Defendants~~ 53. Plaintiff repeats and realleges paragraphs 1 through 40.

54. The individual defendants initiated ~~and~~ or continued ~~a~~ the criminal proceeding ~~and prosecution against Plaintiff.~~

~~57. Defendants provided false or incomplete information to prosecutors or failed to correct known deficiencies.~~

~~58. As a result, prosecutors continued the case in reliance on Defendants' false or incomplete information.~~

~~59. The court or jury should infer malice from Defendants' continuation of this prosecution despite exculpatory facts.~~

~~60. The proceeding lacked~~ without probable cause and ~~was continued~~ with actual malice or reckless ~~disregard.~~

~~61. Plaintiff suffered deprivation of liberty as a result.~~

~~62. The~~ disregard, and the proceeding terminated in Plaintiff's favor.

**~~THIRD CAUSE OF ACTION (Municipal Liability – Monell)~~ 55. The individual defendants acted within the scope of their employment. The City is vicariously liable for their New York-law torts under respondeat superior.**

~~63. Defendants acted pursuant to policies, customs,~~ 56. Plaintiff timely served a Notice of Claim for malicious prosecution within ninety days after favorable termination, more than thirty days elapsed without adjustment or payment, and ~~practices of the City of New York.~~

~~64. NYPD officers receive training on probable cause, arrest discretion, and the use of Desk Appearance Tickets.~~

~~65. Defendants effected arrests based on uncorroborated accusations in circumstances where NYPD rules required investigation and corroboration.~~

~~66. Defendant Michel approved or ratified unconstitutional arrest decisions in a supervisory capacity.~~

~~67. Sergeant Michel had the authority and ability to stop the arrest and incarceration but failed to do so despite known deficiencies.~~

~~68. Plaintiff lodged complaints with NYPD Internal Affairs concerning officer misconduct.~~

~~69. Such complaints were dismissed or minimized without the imposition of discipline or corrective action. This practice was consistent with NYPD's tolerance and ratification of arrests made without required investigation or corroboration, and was known to or should have been known to supervisory and policymaking officials.~~

~~70. Despite NYPD's obligation to maintain website that makes full disclosure of complaints and findings of misconduct, the NYPD does in fact fail to record or disclose such complaints of arrests based on uncorroborated accusations, thereby signaling approval of such practices.~~

~~71. These failures constituted deliberate indifference to constitutional rights.~~

~~72. Upon information and belief, similar arrests by Defendants based on uncorroborated accusations occur with frequency.~~

~~73. Plaintiff's injuries were the foreseeable result of these municipal policies and customs.~~

~~**FOURTH CAUSE OF ACTION (False Arrest – New York Law)**~~

~~74. Defendants falsely arrested Plaintiff under New York law.~~

~~75. Plaintiff complied with all applicable notice-of-claim requirements, or such requirements were tolled or excused.~~

~~**FIFTH CAUSE OF ACTION (Malicious Prosecution – New York Law)**~~

~~76. Defendants' continuation of the prosecution despite known exculpatory facts permits a reasonable inference of malice.~~

~~77. Defendants maliciously prosecuted Plaintiff in violation of New York law.~~

~~78.~~ Plaintiff satisfied ~~all~~ the applicable conditions ~~precedent to bringing these claims.~~ precedent.

**DAMAGES**

~~79. Defendants~~ 57. The individual defendants acted intentionally, maliciously, recklessly, or with ~~reckless and~~ callous indifference to Plaintiff's federally protected

~~rights.~~

~~80. Plaintiff suffered loss of liberty, emotional distress, reputational harm, legal expenses, and other~~ rights, warranting compensatory damages ~~and irreparable harm.~~ and, as proved, punitive damages against the individual defendants only.

**JURY DEMAND**

~~81.~~ 58. Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests ~~judgment against Defendants for:~~ judgment:

a. ~~Compensatory damages;~~ awarding compensatory damages against the individual Defendants on the federal claims and against the individual Defendants and the City of New York as permitted on the New York-law malicious-prosecution claim;

b. ~~Punitive~~ awarding punitive damages against the individual defendants;

c. ~~Costs and~~ awarding reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

d. ~~Such~~ awarding pre- and post-judgment interest as permitted by law;

e. granting such other and further relief as the Court deems just and ~~proper.~~ proper;

~~DATED:~~ Dated: New York, New York ~~January 8,~~ September 4, 2026

~~Kent Gubrud Attorney for Plaintiff,~~ LAW OFFICE OF KENT GUBRUD, P.C. By:

Kent Gubrud Attorney for Plaintiff

315 Madison Avenue, Suite ~~3055,~~ 3055 New York, ~~NY~~ New York 10017 (212) 968-8818 ~~Email:~~ KentGubrud@fastmail.com