**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL A. MATLOCK,<br><br>Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK; POLICE OFFICER BRENDEN ROGERS, Shield No. 2146; SERGEANT ANDRE MICHEL, Shield No. 2637; POLICE OFFICER JAMILETTE HOLLIGAN, Shield No. (presently unknown); POLICE OFFICER ROBBY VALDEZ, Shield No. 21848; and JOHN/JANE DOE NYPD MEMBERS 1-5,<br><br>Defendants. | Case No. 1:25-cv-10081-AS<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael A. Matlock, by his attorney, alleges as follows:

## PRELIMINARY STATEMENT

1. This action under 42 U.S.C. § 1983 and New York law arises from Plaintiff's warrantless arrest at the New York City Police Department's 9th Precinct on April 15, 2025, at approximately 1:41 p.m., and the criminal prosecution that followed. The arrest and prosecution concerned an accusation that Plaintiff had taken mail allegedly containing a Social Security card and employment-authorization card belonging to Christine Roudier.

2. The accusation rested principally on Roudier's assertion that she recognized Plaintiff's signature on a one-page United States Postal Service image. The records now disclosed contain materially different accounts of whether the mailing was delivered to a Broadway address or instead retrieved from a postal facility; identify different apartment numbers; reflect different relevant dates; and identify no postal witness, recovery of the cards, authenticated proof of the package contents, comparison of signatures, demand for return, refusal to return, admission, or eyewitness to Plaintiff's possession of the items.

3. Although Plaintiff voluntarily surrendered after an express pre-surrender agreement that he would be processed and promptly released on a desk appearance ticket, Defendants placed him under custodial arrest and confined and processed him for several hours. Defendant Rogers later signed and swore to the criminal complaint. The charges were dismissed on September 8, 2025, and the record was sealed.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

5. This Court has supplemental jurisdiction over the related New York-law claim under 28 U.S.C. § 1367(a).

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to the claims occurred in New York County, within this District.

## PARTIES

7. Plaintiff Michael A. Matlock is a United States citizen and has resided in Key West, Florida since approximately 2016. At the time of the arrest, he was approximately 78 years old.

8. Defendant City of New York is a municipal corporation that maintains the NYPD. It is sued on the New York-law malicious-prosecution claim under respondeat superior for torts committed by its employees within the scope of their employment.

9. Defendant Police Officer Brenden Rogers, Shield No. 2146, was at all relevant times an NYPD employee acting under color of state law. The disclosed records identify him as a reviewing supervisor in the December 2024 reporting chain, the arresting officer on April 15, 2025, and the officer who signed and swore to the criminal complaint on April 21, 2025.

10. Defendant Sergeant Andre Michel, Shield No. 2637, was at all relevant times an NYPD supervisor acting under color of state law. The disclosed records identify him as a supervisor in the December 2024 reporting chain and as the desk or supervising officer who participated in and approved the April 15, 2025 arrest and desk-appearance-ticket process.

11. Defendant Police Officer Jamilette Holligan, shield number presently unknown, was at all relevant times an NYPD employee acting under color of state law. The NYPD arrest report identifies her as an assisting officer in Plaintiff's arrest. Upon information and belief, she participated directly in taking Plaintiff into custody or maintaining that custody. The precise scope of her conduct is particularly within Defendants' possession and will be clarified in discovery.

12. Defendant Police Officer Robby Valdez, shield number 21848, was at all relevant times an NYPD employee acting under color of state law. The disclosed domestic-incident report identifies him as the reporting officer who received and recorded Roudier's accusation on December 5-6, 2024. Upon information and belief, he participated in creating or forwarding the factual record that led to the I-Card and prosecution. The precise scope of his conduct and knowledge is particularly within Defendants' possession and will be clarified in discovery.

13. John/Jane Doe NYPD Members 1-5 are the presently unidentified officers or supervisors who created or approved the I-Card, approved or effectuated the arrest, maintained Plaintiff's confinement, or transmitted materially false or incomplete information for prosecution. They acted under color of state law. Plaintiff will substitute their names when learned.

## FACTUAL ALLEGATIONS

14. Plaintiff formerly lived at 832 Broadway in Manhattan but had resided in Florida continuously since approximately 2016. The Broadway location continued to be associated with Plaintiff as a business or mailing address; use of an address did not establish Plaintiff's domicile or any intent to steal mail.

15. On December 5, 2024, Roudier complained to NYPD that mail intended for her, allegedly containing a Social Security card and employment-authorization card, had been taken or received through an address associated with Plaintiff.

16. Roudier had used an address associated with Plaintiff for personal mail. This history supplied a noncriminal explanation for any mailing arriving at that address and a reason to investigate the accusation carefully.

17. The disclosed USPS image appears to reflect a November 16, 2024 event and an address of 832 Broadway, Apartment 1, while other police records identify Apartment 5. Other records state that Roudier went to retrieve mail on or about November 25, 2024 and was told it had already been picked up. Still other records describe delivery to an address rather than pickup at a postal facility.

18. The police records do not identify the postal employee who allegedly supplied information to Roudier; do not contain a complete USPS event history, GPS or delivery-device data, or authenticated signature record; and do not identify an eyewitness who saw Plaintiff receive, retrieve, possess, conceal, or dispose of the items.

19. No allegedly stolen card was recovered from Plaintiff. No disclosed report records a demand by Roudier for return of the cards, a refusal by Plaintiff, an admission by Plaintiff, or any statement showing an intent permanently to deprive Roudier of property.

20. The available records do not establish that the tracked item actually contained the two cards. They repeat Roudier's description but do not identify the sender, packaging record, or other independent proof of contents.

21. The disclosed police forms nevertheless classified the matter as completed petit larceny and generated an I-Card that designated Plaintiff as a person for whom probable cause to arrest supposedly existed. The I-Card was not a judicial warrant.

22. Valdez prepared the initial domestic-incident report. Michel signed or approved that report as supervisor, and Rogers was identified as a reviewing supervisor. Thus, Michel and Rogers participated in reviewing the accusation months before the arrest and had an opportunity to recognize and investigate the missing proof and inconsistent accounts.

23. On or about February 26, 2025, while Plaintiff was in Ottawa, Canada, Rogers telephoned Plaintiff concerning the accusation and claimed that Plaintiff lived in New York City or that a warrant was being issued. Plaintiff promptly told Rogers that he lived in Florida and had done so for years.

24. Rogers referred to one or more unidentified neighbors who supposedly said Plaintiff lived in New York City. No neighbor statement or identity appears in the disclosed production. In any event, residence at or association with an address would not establish that Plaintiff knowingly possessed Roudier's cards or intended to steal them.

25. Plaintiff denied stealing or possessing Roudier's cards. Defendants did not confront him with authenticated postal records, interview an identified postal witness in his presence, recover property, or identify evidence establishing the item's contents or criminal intent.

26. Plaintiff, through counsel, arranged to surrender at the 9th Precinct and expected to be processed for and promptly released on a desk appearance ticket. His voluntary surrender, known identity, age, nonviolent alleged offense, and long-standing out-of-state residence showed that he posed no danger and was not attempting to evade the police.

27. On April 15, 2025, Plaintiff appeared voluntarily at the NYPD 9th Precinct, located at 321 East 5th Street, New York, New York 10003.

28. At approximately 1:41 p.m. that day, Rogers, with the participation or approval of Michel, Holligan, and one or more Doe officers, placed Plaintiff under custodial arrest for an alleged past petit larceny. No arrest warrant had been issued.

29. The arrest report identifies Rogers as the arresting officer, Michel as a supervising or desk officer, and Holligan as an assisting officer. The desk appearance ticket likewise identifies Rogers and Michel in the arrest and desk-officer roles.

30. Defendants confined Plaintiff in the precinct holding area and subjected him to prisoner processing. A prisoner movement slip was printed at approximately 4:13 p.m.; Rogers body-camera files bear times of approximately 4:03 p.m. and 4:19 p.m.; and Plaintiff was thereafter released with a desk appearance ticket. Plaintiff alleges that the entire custodial process lasted several hours; the exact release and holding-cell times are recorded in Defendants' systems and presently unavailable to him.

31. Before and during the arrest, Rogers and Michel had reviewed or had access to records reflecting Roudier's prior use of an address associated with Plaintiff for personal mail, conflicting accounts of delivery versus pickup, inconsistent address information, absence of recovered property, absence of a postal eyewitness, and absence of any admission or refusal to return property.

32. Those were not merely investigative avenues left unexplored. The facts already known to Rogers and Michel materially undermined the reliability and sufficiency of the accusation, including conflicting accounts of delivery versus pickup, inconsistent address information, the absence of recovered property or an identified postal witness, and the absence of any admission or refusal to return property. Nevertheless, before arresting Plaintiff, Rogers and Michel did not resolve readily verifiable postal, signature, address, contents, or witness information bearing directly on whether Plaintiff ever knowingly possessed Roudier's property or acted with larcenous intent.

33. Holligan and the Doe arresting or assisting officers participated in the arrest or continued confinement despite circumstances demonstrating the absence of adequate probable cause. To the extent any such defendant did not directly effectuate the arrest or confinement, that defendant knew of the circumstances, had a realistic opportunity to prevent or terminate the unlawful seizure, and failed to intervene. These allegations are made on information and belief based on the arrest report and records identifying their roles; the body-camera recordings and native audit records will supply further detail.

34. On April 21, 2025, Rogers signed and swore to a criminal complaint charging Plaintiff under New York Penal Law §§ 155.25 and 165.40. The complaint relied on Roudier's account, a purported USPS pickup or delivery receipt, and her claimed recognition of Plaintiff's signature.

35. In initiating the prosecution, Rogers presented the accusation without disclosing the material weaknesses and contradictions described above, including the absence of a postal witness, recovery of the allegedly stolen cards, authenticated signature comparison, independent proof of contents, demand and refusal, admission, or other evidence of knowing possession or intent to deprive.

36. Upon information and belief, Michel, Valdez, and one or more Doe defendants caused or contributed to the initiation or continuation of the prosecution by creating, approving, forwarding, or causing prosecutors to receive materially incomplete or misleading police records concerning the accusation, despite knowing or recklessly disregarding the material gaps or contradictions. The native report histories, communications, and records identifying who transmitted particular information are exclusively within Defendants' possession.

37. As required by the desk appearance ticket, Plaintiff appeared in Manhattan Criminal Court with counsel on May 5, 2025. The prosecution remained pending thereafter until September 8, 2025. No further personal court appearance by Plaintiff was required before dismissal.

38. The criminal proceeding was dismissed on September 8, 2025. The disclosed court action sheet appears to reflect dismissal pursuant to CPL § 30.30, and the record was sealed pursuant to CPL § 160.50. The proceeding terminated without a conviction.

39. On or about October 15, 2025, Plaintiff served a Notice of Claim arising from the arrest and prosecution; the New York City Comptroller received it on October 30, 2025 and assigned Claim No. 2025P1035318. More than thirty days elapsed before suit, and the City did not adjust or pay the claim.

40. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, humiliation, emotional distress, reputational injury, legal expense, and other compensable damages. In connection with the criminal matter, Plaintiff's NEXUS trusted-traveler privileges were withdrawn and have not been restored despite dismissal of the charges. Plaintiff regularly travels between the United States and Canada because he owns a residence and conducts business in Ottawa. The loss of NEXUS privileges has subjected him to substantially increased border-processing delays, including secondary inspection and multi-hour delays, and has disrupted his personal and business travel.

**FIRST CAUSE OF ACTION**

**False Arrest - 42 U.S.C. § 1983**

41. Plaintiff repeats and realleges paragraphs 1 through 40.

42. Rogers, Michel, Holligan, and the responsible Doe defendants intentionally confined Plaintiff under color of state law. Plaintiff was conscious of and did not consent to that confinement.

43. The confinement was not privileged because the individual defendants lacked probable cause to believe Plaintiff had committed petit larceny or criminal possession of stolen property and because no reasonable officer could disregard the material contradictions and readily verifiable gaps known before the warrantless arrest.

44. The conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and caused damages.

**SECOND CAUSE OF ACTION**

**Malicious Prosecution - 42 U.S.C. § 1983**

45. Plaintiff repeats and realleges paragraphs 1 through 40.

46. Rogers initiated the prosecution by signing and swearing to the criminal complaint. Upon information and belief, Michel, Valdez, and the responsible Doe defendants caused or contributed to the initiation or continuation of the prosecution by creating, approving, forwarding, or causing prosecutors to receive materially incomplete or misleading information on which the prosecution relied.

47. The prosecution lacked probable cause. Defendants acted with actual malice or reckless disregard for Plaintiff's rights, as shown by their initiation or continuation of charges despite the material contradictions, missing proof, and noncriminal explanations known to them.

48. The prosecution terminated in Plaintiff's favor on September 8, 2025 without a conviction.

49. The prosecution compelled Plaintiff to appear in Manhattan Criminal Court on May 5, 2025, and thereafter remain subject to the pending criminal proceeding and the authority of the Criminal Court until dismissal. Plaintiff alleges that the resulting restraint on his liberty was consistent with a Fourth Amendment seizure and caused compensable damages. No further personal court appearance was required before dismissal.

**THIRD CAUSE OF ACTION**

**Failure to Intervene - 42 U.S.C. § 1983**

50. Plaintiff repeats and realleges paragraphs 1 through 40.

51. To the extent Holligan or a responsible Doe defendant did not directly commit the false arrest or unlawful confinement, that defendant observed or knew of the violation, had a realistic opportunity to prevent or terminate it, and deliberately failed to intervene.

52. That failure caused or prolonged Plaintiff's unlawful seizure and prosecution in violation of the Fourth Amendment.

**FOURTH CAUSE OF ACTION**

**Malicious Prosecution - New York Law**

53. Plaintiff repeats and realleges paragraphs 1 through 40.

54. The individual defendants initiated or continued the criminal proceeding without probable cause and with actual malice or reckless disregard, and the proceeding terminated in Plaintiff's favor.

55. The individual defendants acted within the scope of their employment. The City is vicariously liable for their New York-law torts under respondeat superior.

56. Plaintiff timely served a Notice of Claim for malicious prosecution within ninety days after favorable termination, more than thirty days elapsed without adjustment or payment, and Plaintiff satisfied the applicable conditions precedent.

## DAMAGES

57. The individual defendants acted intentionally, maliciously, recklessly, or with callous indifference to Plaintiff's federally protected rights, warranting compensatory damages and, as proved, punitive damages against the individual defendants only.

## JURY DEMAND

58. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment:

a. awarding compensatory damages against the individual Defendants on the federal claims and against the individual Defendants and the City of New York as permitted on the New York-law malicious-prosecution claim;

b. awarding punitive damages against the individual defendants;

c. awarding reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

d. awarding pre- and post-judgment interest as permitted by law;

e. granting such other and further relief as the Court deems just and proper;

Dated: New York, New York
September 4, 2026

LAW OFFICE OF KENT GUBRUD, P.C.

By: ______________________________

Kent Gubrud
Attorney for Plaintiff
315 Madison Avenue, Suite 3055
New York, New York 10017
(212) 968-8818
KentGubrud@fastmail.com